**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **RAMON ESPINOSA** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **v.** | ) | Civil Action No:_____ |
| | ) | |
| | ) | |
| **EXPERIAN INFORMATION** | ) | |
| **SOLUTIONS, INC.** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Ramon Espinosa, by and through counsel, brings this Complaint against Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1.       Mr. Espinosa is a Marine that serves his country proudly and as such needs to maintain an appropriate credit report history.  At some point an identity thief used his personal information to open a credit account and take advantage of Upgrade's loose, online credit applications.  Mr. Espinosa discovered the fraudulent account on his credit file and disputed it directly with Upgrade and then with Experian.  He called Experian twice and disputed the trade line in writing twice.  Each time he disputed it, Experian verified that the account belonged to him.  Mr. Espinosa asked Experian to contact the creditor and ask it to provide proof of his signature or identity, since he had nothing to do with opening the account.  As with many identity theft accounts, that account was opened with a different address and no payments were ever made, making it a first payment default.  Despite significant proof to place doubt as to his ownership and make it impossible for an entity like Experian to swear or affirm under oath (verify) that Mr.

Espinosa opened the account, it continued to verify his responsibility.  As part of the dispute process, Mr. Espinosa asked Experian to disclose to him what it did to investigate his dispute since it failed to delete the account and correct his credit report.  In response to that request, Experian responded that it merely forwarded his dispute information to the furnisher (Upgrade), told it to review the information and respond back with its conclusions.  What Experian never said and (never did) was conduct its own independent reinvestigation in accordance with §1681i(a)(5) and since it lacked sufficient information to prove or verify that Mr. Espinosa had anything to do with this account, it should have deleted the trade line.  Instead, it did what it regularly does, and merely accepted whatever the furnisher reported back and simply parroted that response.  Accordingly, Mr. Espinosa requests an award of actual damages, statutory damages, punitive damages, attorney's fees and costs based upon Experian's violations of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq.*

## Parties

2.      Plaintiff Ramon Espinosa is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because he is an individual.  Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Ramon Espinosa.

3.      Defendant Experian Information Solutions, Inc. (hereinafter "Experian"), is a foreign limited liability company with a principal office address in California.  Experian is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.  Experian regularly conducts these business activities in the Eastern District of Virginia by

providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

**Jurisdiction & Venue**

4.      This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681(p).  Venue is proper in this jurisdiction.  Plaintiff resides in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of his claims.

**Factual Allegations**

5.      Mr. Espinosa has been dealing with identity theft issues, and he has engaged in repeated efforts with Experian to stop the identity theft and dispute an account that injured his Experian credit file when he did not open or initiate the account.

6.      Mr. Espinosa is unclear as to how an identity thief obtained his identifying information, but he did not initiate a delinquent Upgrade account that he has disputed on multiple occasions with Experian.

7.      Upgrade is a non-traditional lender that was founded in 2016.  Upgrade makes personal loans and issues lines of credit to consumers like a traditional bank, but Upgrade does not operate physical branch locations.

8.      Since Upgrade operates on-line, accounts opened with Upgrade are initiated without a consumer appearing in a bank or branch office.  This situation creates an opportunity for on-line identity fraud because there is little to no in person contact with a customer.

9.      Based upon information and belief, Experian knows Upgrade is a non-traditional bank, and yet Experian allows Upgrade to furnish credit reporting information to Experian despite the inherently unreliable account level documentation systematically maintained by Upgrade.

10.     Experian has a duty to investigate disputed account file data and verify information reported by furnishers as reliable.

11.     Experian knows that it must monitor furnishers for reliability, and it undertakes this obligation in the form of a metrics report on furnishers.

12.     Experian has metrics reports regarding Upgrade.

13.     Mr. Espinosa was the victim of a scam involving an identity thief opening an account in his name and personal identifying information with Upgrade.

14.     Based upon information and belief, Upgrade had no physical copies of Mr. Espinosa's identification as part of its account level documentation to establish that Mr. Espinosa opened this account.

15.     Despite repeated disputes with Experian, it would never delete the Upgrade account from Mr. Espinosa's Experian credit file.

16.     Experian knows that identity theft is a real crime in the United States.

17.     Experian knows that identity theft is one of the fastest growing crimes in the United States.

18.     Experian knows that identity thieves open fraudulent accounts using stolen or appropriated information of other individuals.

19.     Experian knows that many lenders that open accounts over the internet do not require the applicant to provide identification documents to prove the identity of the applicant.

20.     At all times relevant, Experian knew and reported on its own credit file data that Mr. Espinosa was a United States Marine.

21.     Experian relied exclusively upon an outsourced, automated ACDV exchange process to support its verification of the disputed account file data.

22.     Experian knows that an ACDV exchange with a furnisher that merely provides a verification of the account data in its files to open the account, does not prove who actually opened the account.

23.     When account ownership is challenged and disputed, Experian knows that just because the furnisher can verify the name, social security number and date of birth, does not prove that the person that actually applied for and opened the account is the disputing consumer as opposed to an identity thief.

24.     Experian's knows or should know that Upgrade is a non-traditional lender that operates by lending money and opening accounts on-line.

25.     At the time that it was processing Mr. Espinosa's disputes, Experian did not have any reliable, factual proof that Upgrade requires its applicants to provide identification documentation or other proof of the identity of individuals applying for loans.

26.     Experian knows that at the time that Mr. Espinosa was disputing this debt as not his that it did not have any proof that he applied for or received the benefit of the disputed loan.

27.     Mr. Espinosa is a long serving member of the United States Marine Corps. As with all military members, maintenance of a good credit history is very important as a readiness issue because the military cannot jeopardize other soldiers or its mission with distracted members with financial issues.  As a result, Mr. Espinosa has taken care to keep his credit accurate and debts current.  In March 2022, Mr. Espinosa reviewed a copy of his credit file and noted that an account with Upgrade appeared on his credit history when he had not initiated an account with Upgrade.

28.     Mr. Espinosa contacted Upgrade, and he informed them that he did not open or initiate any account with them.  He told them the account was identity theft related and disputed

the account with them.  A representative from Upgrade requested that he file a police report to report the identity theft with the local authorities.

29.     On March 3, 2022, Mr. Espinosa filed a police report with the Stafford County Sheriff's Office.  He was not able to receive a copy of the police report, but he was told that the police report number was 2022-001762.

30.     On March 9, 2022, Mr. Espinosa contacted Experian via the telephone, and he informed the telephone operator that an identity thief opened the Upgrade account.  He stated that the account should not be on his credit file, and he stated that he had already filed a police report and that the police report number was 2022-001762.

31.     The representative that took the phone call is not believed to have any authority to conduct the reinvestigation required by the Fair Credit Reporting Act on behalf of Experian. Discovery is necessary as to whether the person on the phone is actually employed by Experian.

32.     The FCRA requires a credit reporting agency to conduct a reasonable reinvestigation of consumer credit disputes.

33.     Experian does not implement a system of dispute reinvestigation that complies with the FCRA because it does not conduct an independent reinvestigation.  Experian simply instructs that an ACDV be issued that is often by an outsourced company that Experian claims in litigation it does not control and is a separate entity.

34.     Experian knows from case law that the FCRA requires more from Experian than simply issuing an ACDV, doing only a data conformity review and transferring its duties to the furnisher.

35.     As to the March 9, 2022 dispute, there is no evidence that Experian reviewed the police report number, considered that a police report was filed, or made any effort to contact the police department to verify that Mr. Espinosa had filed a police report.

36.     On March 30, 2022, Experian provided the results of Mr. Espinosa's dispute of the Upgrade account.  Experian responded by telling him that the information that he disputed had been verified as accurate.

37.     Based upon the way Experian took the dispute over the telephone, issued an ACDV, and provided a response, it is unlikely that in compliance with §1681i(a)(1), (4) and (5), any human reviewed and considered either the dispute that Mr. Espinosa made or the response that Upgrade provided Experian.

38.     The ACDV that Experian issued to Upgrade noted that Mr. Espinosa filed a police report, had the police report number, and the date of filing.

39.     In the ACDV response back from Upgrade, Upgrade did not respond to Experian with the current address that Experian had for Mr. Espinosa.

40.     The address that Upgrade provided for Mr. Espinosa was not a direct match for any address where Mr. Espinosa had ever lived.

41.     As a result of the difference in the address, Experian issued a different address identification number for the address provided by Upgrade when compared to a similar former address that Experian already maintained in its database for Mr. Espinosa.

42.     This discrepancy regarding the address on the Upgrade account should have corroborated the identity theft allegation as identity thieves will make minor changes to data to assist in the identity theft.

7

43.     If Experian had conducted a reasonable reinvestigation by comparing all the data received in the ACDV response with the data that it maintained in its file, Experian would have seen that Upgrade had a different address than one that was in its records for Mr. Espinosa.

44.     Experian must admit the information that Upgrade provided in ACDV No. 1000552149001 did not prove or provide Experian with a factual basis to verify (*i.e* "swear or support by affidavit") that Mr. Espinosa opened or had anything to do with the Upgrade account.

45.     In light of the fact that Experian knew that Mr. Espinosa was serving in the United States Marine Corps, it should have taken his dispute more seriously and not simply accepted the account verification data from Upgrade to allow this fraudulent account to remain on his credit file and cause him damage in his employment serving his country.

46.     Mr. Espinosa was frustrated with Experian because they did not remove the Upgrade account.   He felt that this was a simple enough credit dispute that they should reinvestigate the situation and remove the fraudulent account from his credit files.

47.     On April 11, 2022, Mr. Espinosa called again into Experian to dispute the identity theft related Upgrade account.

48.     Mr. Espinosa again explained the circumstances, told the telephone operator that he disputed the Upgrade account, and provided the police report number to be included as part of the dispute.   As a result of this telephone call, Experian once again had an ACDV issued to Upgrade.

49.     Despite the fact that Experian knew that the ACDV exchange would not prove or provide sufficient facts for Experian to verify (as that word is commonly defined) that Mr. Espinosa opened or benefitted from the Upgrade account, it repeated the exact same behavior.

8

50.     Experian's dispute reinvestigation process is most analogous to Albert Einstein's definition of insanity: doing the same thing over and over again and expecting different results.

51.     Just as had happened after Mr. Espinosa's first telephone call, Upgrade responded to the ACDV in similar fashion as it's prior response by providing an incorrect former address and updating the past due amount owed on April 19, 2022.

52.     Experian ignored the notice to it by Mr. Espinosa that a police report had been filed, ignored the address discrepancy, ignored that the account was a first payment default and ignored its knowledge that an ACDV exchange with a furnisher cannot provide sufficient facts to refute a consumer's claims that an account was not opened by them.

53.     On or about April 28, 2022, Experian received a written credit dispute package from Mr. Espinosa with a credit dispute letter and a copy of his Virginia's driver's license.  The beginning of the letter informed Experian that he was the victim of identity theft.  He requested that Experian only release his credit information with his direct permission, and he provided a telephone number at which he could be reached if there were any questions.

54.     In that April 2022 dispute letter, Mr. Espinosa asked Experian to remove the Upgrade account from his credit file because an identity thief opened the account.  He went on to tell Experian that he filed a police report with the Stafford County Sheriff's Office and provided the case number 2022001762 and the name of Officer Sterne for verification as well as the office phone number.  He concluded the letter by informing Experian that his wife had just had a baby and that the situation was making his life additionally stressful because of this situation.

55.     Experian knew or certainly could not refute that Mr. Espinosa was not only serving his country in the Marine Corps, but that he had filed an official police report related to the theft of his identity.

56.     On May 20, 2022, Experian provided a response to this dispute letter, and Experian refused to delete the account from Mr. Espinosa's credit file.  In addition, Experian updated the reporting to state that $298 was past due as of April 2022 and now 90 days past due, which severely depressed Mr. Espinosa's credit score.  Experian's data related to the account proved that the account was a first payment default because there was no prior history of payments.

57.     Experian knows that first payment defaults on accounts are indicators (not absolute proof) of identity theft because often the thief is long gone after the payments are due.

58.     Experian ignored the information related to the police report as its outsourced processors were not authorized to contact the Stafford County sheriff's officer.

59.     Experian should have simply deleted the account because of the specific information related to the identity theft report that Mr. Espinosa provided in the credit dispute letter.  Experian also provided boilerplate language that "the credit grantor requests that you contact them directly."  Based upon information and belief, there is no truth to Experian's statement because Upgrade did not specifically ask that Mr. Espinosa contact it.  Experian just includes this boiler plate language to further confuse consumers and try to shift the burden on the consumer to have the information deleted when the FCRA burden of proof is that Experian must "verify" that it can attribute the account to Mr. Espinosa's credit file.

60.     On or about June 13, 2022, Experian received Mr. Espinosa's second written credit dispute of the identity theft related Upgrade account.

61.     This was his fourth dispute of the Upgrade account with Experian.

62.     The letter stated that he had nothing to do with the account and that he wanted it removed from his credit file.  He included additional information in the dispute that he did not receive the proceeds of the money and that Experian should investigate with Upgrade where the

money was sent because wherever the money was sent would identify that Mr. Espinosa did not receive the benefit of the loan and would name the identity thief.

63.     Mr. Espinosa also stated in his dispute letter that he did not sign any documents and that Experian should ask for a copy of what was signed or of his identification to prove that he opened the account.   This was a critical fact because Upgrade would not have copies of Mr. Espinosa's driver's license and no copy of his signature to prove that he opened the line credit, and no proof that Mr. Espinosa received the money for the loan.

64.     Mr. Espinosa also asked Experian to inform him what it did to investigate the dispute including who at Experian spoke with the Stafford County Sheriff's Office about the identity theft report.

65.     On June 20, 2022, Experian sent a letter to Mr. Espinosa that misrepresented that he must send a copy of the police report to have the information removed from his credit file.  This is a misrepresentation of the FCRA because Experian has a duty to verify that it can report the information on his credit file.

66.     Mr. Espinosa provided all the information related to the police report, and Experian had a duty to use that information as part of its reinvestigation.  Instead, Experian purposefully implements a system that does not reinvestigate properly and delegates its statutory duties to outsourced processors that it claims are third parties and to the furnishers who have already demonstrated a lack of standards in opening accounts because of identity theft.

67.     Experian purposefully blurs the line between an identity theft block request and its statutory duties under 15 U.S.C. §1681i(a).   These factors support the implementation of substantial punitive damages.

68.     On July 7, 2022, Experian provided the results of the reinvestigation to Mr. Espinosa.  Experian not only refused to delete the account from the credit file, but it updated the account to show that it was even more derogatory than the credit reporting that previously occurred.  Now, Experian reported that $394 was past due, and Experian still reported that the account was a first payment default, one of the hallmarks of identity theft.

69.     Pursuant to §1681i(a)(6)(B)(iii) Experian has an obligation to notify consumers like Mr. Espinosa that he can request "a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the <u>consumer</u> by the agency, including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available."

70.     Pursuant to §1681i(a)(7)(B)(iii) A consumer reporting agency shall provide to a consumer a description referred to in paragraph (6)(B)(iii) by not later than 15 days after receiving a request from the consumer for that description.

71.     Experian failed to state what it specifically did to investigate his dispute including whether it spoke to anyone in the Stafford County Sherriff's Office.  Instead of providing a clear statement of actually what it did to investigate this specific dispute, Experian provided a buried sentence in a larger paragraph.  "If we were able to make changes to your credit report based on information you provided, or if you requested the addition of a statement, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary."

72.     That disclosure of what Experian claimed to do did not include any claim or assertion that it (Experian) conducted a reasonable reinvestigation to determine if the disputed information is inaccurate in accordance with §1681i(a)(1)(A).

73.     The disclosure of what Experian claimed to do did not include any statement that it complied with §1681i(a)(4) that Experian itself reviewed and considered all relevant information submitted by Mr. Espinosa.

74.     The disclosure of what Experian claimed to do did not include any statement that after it received the ACDV response back from Upgrade that it conducted any independent investigation or determination as to whether or not the disputed account and trade line data was properly attributable to Ms. Espinosa or was the result of an identity thief.

75.     Experian did not notify Mr. Espinosa that it conducted any of those required reinvestigation steps as outlined in §1681i, because it failed to conduct them and merely parroted what Upgrade reported back to it.

76.     At the time of his disputing the accounts, Experian caused Mr. Espinosa significant distraction and time spent working on this problem when his family needed him.  Mr. Espinosa had recently welcomed a baby to his family with his wife.  Instead of focusing on and enjoying their new baby, Mr. Espinosa was forced to engage in credit monitoring and repeated time spent notifying Experian of the errors on his credit including the Upgrade account and various unauthorized inquiries into his credit file.

77.     Given the egregious manner that Experian handled Mr. Espinosa credit disputes, punitive damages are necessary to deter Experian and force it to change its reinvestigation practices.  Among the factors that support substantial punitive damages is that fact that Experian takes in immense revenue as a credit reporting agency, yet it refuses to allocate reasonable

resources to process consumer disputes to ensure maximum possibly accuracy of its data. According to Experian's website, the Consumer Services division contributes 20% to its global revenue.  In addition, Experian's website states that it had operating revenue of $4,861,000,000 in 2019.  *See* www.experianplc.com/investors/key-financial-data/.  Experian earns massive profits processing and selling consumer data, but it refuses to take consumer accuracy disputes seriously as required by §1681i of the FCRA and instead outsources those duties to poorly trained and supervised processors to save money and further increase corporate profits.

**COUNT I**
**Fair Credit Reporting Act**
**15 U.S.C. §1681i**

78.     Plaintiff incorporates paragraphs one (1) through seventy-seven (77) as if fully stated herein.

79.     Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to comply with the enumerated statutory provisions when Mr. Espinosa disputed the accounts as described in the factual averments.

80.     Experian's reinvestigation procedures do not comply with the stated statutory requirements of 15 U.S.C. §1681i(a)(1) through §1681i(a)(5).

81.     §1681i(a)(1)(A) provides that upon notice of the dispute that Experian is obligated to: "conduct a reasonable reinvestigation to determine whether the dispute information is inaccurate."

82.     §1681i(a)(2) obligates Experian to: "provide notification of the dispute to any person who provided any item of information in dispute."

83.     §1681i(a)(4) details the scope of Experian's reinvestigation under paragraph (1) and makes clear that Experian Information Solutions, Inc. "shall review and consider all relevant information submitted by the consumer...with respect to such disputed information."

84.     Finally, §1681i(a)(5) provides that after Experian has completed the forgoing steps and reinvestigation that if: "an item of information is found to be inaccurate or incomplete or cannot be verified," Experian must delete or modify the information.

85.     Experian violated 15 U.S.C. §1681i(a)(1) by its conduct related to Mr. Espinosa's disputes that it received as identified in the factual averments.  With regards to the disputes, Mr. Espinosa identified the Upgrade account as an account that he did not open or initiate.   Discovery is necessary as to what exactly Experian did do after all of the disputes.

86.     Based upon documents reviewed to date, and Experian's own disclosure to Mr. Espinosa as to what it did do, Experian simply issued an ACDV to Upgrade and did not conduct any other reinvestigation.

87.     Based upon information and belief, the only factual basis that Experian had at the time of Mr. Espinosa's dispute reinvestigations were the ACDV responses back from Upgrade

88.     This type of reinvestigation is a reckless and/or negligent reinvestigation because Experian fails to conduct an independent reinvestigation as required by the FCRA.  In all of the disputes, Mr. Espinosa identified the police report number and that he had filed a police report with the Stafford County sheriff's office.  No reasonable reinvestigation would have failed to consider the police report filed, that the account was a first payment default, that the address

provided by Upgrade was not one previously associated with Mr. Espinosa and allowed the account to remain on a Mr. Espinosa's credit file.

89.     The FCRA requires that in conducting its reinvestigation under 15 U.S.C. §1681i(a)(1)(A) that a credit reporting agency must conduct the reinvestigation after receiving the consumer's credit dispute letter and unless it is able to verify said information Experian must delete the disputed account from the credit file as stated in 15 U.S.C. §1681i(a)(5)(A):

> In general If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or **cannot be verified**, the consumer reporting agency shall- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. §1681i(a)(5)(A) (emphasis added)

90.     According to Black's Law Dictionary, the ordinary meaning of verify is, "to prove to be true; to confirm or establish the truth or truthfulness; to authenticate."

91.     Based upon the circumstances, Experian knew that there was a problem with the data on Mr. Espinosa's credit file, knew that he did not open or initiate the Upgrade account, and knew Upgrade did not respond to the ACDV with a proper former address.

92.     Rather than undertake a more reasonable and detailed reinvestigation, Experian likely contracted for an outsourced third-party processor to issue a coded dispute to Upgrade with Experian's computers "verifying" the information with no meaningful reinvestigation after receiving the ACDV response from the furnisher of the information.

93.     Experian also violated 15 U.S.C. §1681i(a)(4) after receiving Mr. Espinosa's disputes because it failed to review and consider the dispute information provided by Mr. Espinosa including the representations that he did not open or initiate the accounts, that the accounts may

16

have been identity theft related, and that he had filed police report along with providing the police report number and date.

94.     Because Experian uses outsourced third-party processors located in Chile and other countries, Experian incentivizes low-cost review at the expense of detailed review and consideration of the specifics of the disputes.  These processors are not provided with adequate training and supervision so that they can execute the functions of §1681i(a)(4) and (5).

95.     Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), Experian automates that process and simply sends the ACDV response to its computer for automated updating and processing.

96.     As a result, Experian fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange.

97.     Experian negligently and recklessly implemented a system with a total disregard for the requirements of §1681i(a)(5).  Rather than allow these processors to review and consider the consumer's dispute package together with the furnisher's ACDV response and make the required determination of §1681i(a)(5)(A), Experian automates that process and simply sends the ACDV response to its computer for automated updating and processing.

98.     Experian fails to conduct the required determination mandated by §1681i(a)(5)(A) and instead simply parrots whatever response the furnisher provides back to it in the ACDV exchange without reasonably considering what information it had in front of it and what it could see was the cause of the disputed data.

99.     If Experian determined that the information was too difficult to verify for purposes of the dispute, the proper response is to delete the information as unverifiable.  Instead, Experian defaults to the furnisher's ACDV response no matter how ridiculous or inconsistent.

100.    In the event that Experian claims that it actually did more to reinvestigate this dispute than it disclosed to Mr. Espinosa, Experian violated §1681i(a)(7) because it failed to provide a proper description of the reinvestigation that Experian actually followed as part Mr. Espinosa's disputes as he specifically requested what Experian did to reinvestigate the disputes.

101.    Mr. Espinosa suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to use his good credit, as well as emotional distress damages with attendant physical manifestations.  In addition, punitive damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

102.    Based upon information and belief and documents reviewed in other cases, Experian has a pattern and practice of failing to require the steps of a reasonable reinvestigation as required by the FCRA to circumvent its duties under the FCRA to conduct reinvestigations and keep the costs of dispute reinvestigations low.

103.    Experian has been on notice of its failure to reinvestigate properly by virtue of other cases and court opinions, and only the imposition of substantial punitive damages will change Experian's policies.  Experian also knows that outsourced automated data conformity reviews do not comply with its grave responsibilities to assure maximum possible accuracy of consumer credit information.

## COUNT II
## Fair Credit Reporting Act
## 15 U.S.C. §1681e(b)

104.    Plaintiff incorporates paragraphs one (1) through one hundred three (103) as if fully stated herein.

105.    Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

106.    Experian willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Mr. Espinosa when it provided a credit report to Rocket Mortgage through Credco. Discovery is necessary related to additional occasions that Experian issued an inaccurate credit report.

107.    Experian's publishing of the inaccurate information was a substantial factor in the stress and strain from knowing that he was unable to begin to qualify with a mortgage through Rocket Mortgage. Experian allowed the Upgrade account to appear on Mr. Espinosa's credit report and included it in any credit reports that his creditors had ordered from Experian.

108.    The fraudulent Upgrade account was a substantial factor in Mr. Espinosa's inability to begin the qualification process for a loan through Rocket Mortgage or be approved.

109.    If it had fixed the issues, he could have instructed Experian to provide an updated credit report for his security clearance review.

110.    Mr. Espinosa suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to obtain a mortgage, higher rates and delay in refinancing the mortgage on his home, threat of problems with his military employment, as well as emotional distress damages with attendant physical manifestations.   In addition, punitive damages are necessary based upon Experian's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

111.    Punitive damages are necessary because Experian has implemented a system and process that it knows results with inaccurate credit reports being sold to furnishers because Experian fails to invest the resources into enacting procedures to protect consumers. Experian has implemented procedures to allow inaccurate data to remain in its system that cannot be verified if reinvestigated properly.  Only punitive damages can curb this type of conduct that operates in reckless disregard for accurate credit reports.

### Prayer for Relief

Wherefore, the Plaintiff prays that the Court award the following relief:

a)      Actual damages based upon Defendant's violations of the FCRA;

b)      statutory damages against Defendant's based upon violations of the FCRA;

c)      punitive damages based upon the violations of the FCRA

d)      costs and reasonable attorneys' fees incurred by the Plaintiff;

e)      prejudgment interest

f)      all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted,
Ramon Espinosa

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Dr. Suite 201
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582